JUDGE FURMAN 14CV0131

Robert P. LoBue
Jonah M. Knobler
Adam E. Pinto
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
Telephone:  (212) 336-2000
Fax:  (212) 336-2222
rplobue@pbwt.com
jkhobler@pbwt.com
apinto@pbwt.com
*Attorneys for Dow Jones & Company, Inc.*



RECEIVED
JAN – 9 2014
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DOW JONES & COMPANY, INC.,

       Plaintiff,

     - against -

REAL-TIME ANALYSIS & NEWS, LTD. (d/b/a
"Ransquawk"),

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No. 14 Civ. _____

**COMPLAINT AND**
**DEMAND FOR  JURY TRIAL**

Plaintiff Dow Jones & Company, Inc. ("Dow Jones"), by and through its attorneys,

Patterson Belknap Webb & Tyler LLP, for its complaint against Defendant Real-Time Analysis

& News, Ltd. ("Ransquawk"), alleges as follows:

### NATURE OF THE CASE

    1.   This is an action for: (1) misappropriation of hot news; and (2) tortious

interference with contractual relationships.

    2.   Dow Jones has a long and distinguished history of reporting news and

business information.  To do so with accuracy, speed, and authority, it dedicates considerable

resources to investigating, reporting, and publishing news in a timely manner to millions of paying subscribers and customers around the world.

3.     There are other entities which instead base their business model substantially on the rapid and systematic taking of the proprietary content published by media organizations like Dow Jones.  Those companies unfairly ride for free on the backs of Dow Jones and others who dedicate substantial resources to gathering and disseminating news.  By nearly instantaneously cutting, pasting, and broadcasting via their own channels the reports of news events that others have uncovered and verified at significant investment and expense, these free-riders offer a pirated product at a cheaper price.   Ransquawk is one such pirate.  It consistently republishes in text on its website, and by audio broadcasts (or "squawks") to its customers, news originated by Dow Jones within seconds of Dow Jones's initial reporting of the news – without Ransquawk doing any reporting, commentary, or analysis of its own.

4.     To combat this unauthorized free-riding, and to preserve the strength and viability of its intellectual property and newsgathering efforts, Dow Jones is seeking relief for defendant's misappropriation of hot news and tortious interference with contract.  The misappropriation of news and other content not only devalues news products, it also threatens the very economic structure upon which journalistic enterprises such as Dow Jones are built and upon which its customers depend.

## THE PARTIES

5.     Plaintiff Dow Jones is a Delaware corporation with its principal place of business located at 1211 Avenue of the Americas, New York, New York.

6.     On information and belief, Defendant Ransquawk is a United Kingdom limited company, with its principal office at 25 Copthall Avenue, London, EC2R 7BP, United

Kingdom.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).  The matter in controversy in this action exceeds $75,000, exclusive of interest and costs.

8.      This Court has personal jurisdiction over Ransquawk pursuant to N.Y. CPLR 301, in that, upon information and belief, Ransquawk is present in New York, including in this district, in a continuous and permanent manner.  Ransquawk makes free trials of its products available to New York customers who consume its content in New York, actively solicits the business of New York customers, and upon information and belief has subscribers to its services in New York.  Further, Ransquawk's website states that it has employees and agents with offices in New York.

9.      This Court also has personal jurisdiction over Ransquawk pursuant to N.Y. CPLR 302(a)(1), in that, upon information and belief, Ransquawk conducts business in New York, including in this district.  Upon information and belief, Ransquawk has marketed, promoted, distributed, and sold its services in New York, thus purposefully availing itself of the privilege of conducting activities within the State.

10.     This Court also has personal jurisdiction over Ransquawk pursuant to N.Y. CPLR 302(a)(3).  Ransquawk has misappropriated Dow Jones's "hot news" either through the actions of its agents in New York or has done so outside of the state, foreseeably causing injury to Dow Jones at its New York headquarters.  Upon information and belief, Ransquawk has marketed, promoted, distributed, and sold its services in New York, thus purposefully availing itself of the privilege of conducting activities within the State.  Upon information and belief,

3

Ransquawk regularly does and solicits business in New York, derives substantial revenue from services rendered in the state, and derives substantial revenue from interstate and international commerce.

11.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), (c), and (d), because a substantial part of the events or omissions giving rise to Dow Jones's claims occurred in this district; because Defendant is subject to personal jurisdiction in this district; and because an alien may be sued in any district.

## FACTS

### A.    The Business Of Dow Jones

12.    Dow Jones is a widely known and respected publisher of business news and information.  It provides news and information through its newswires, websites, newspapers, newsletters, databases, magazines, and radio and video reports.  Dow Jones is able to collect and provide accurate, comprehensive, and timely news and business information to its millions of worldwide customers through the significant efforts of its journalists and its substantial investments in its worldwide journalistic infrastructure.

13.    Dow Jones's flagship publication is *The Wall Street Journal*.  Founded in 1889, *The Wall Street Journal* is America's largest newspaper by paid circulation, with a circulation of more than 2.2 million readers.  In addition to *The Wall Street Journal*, Dow Jones publishes *Barron's* and MarketWatch.com, and operates Dow Jones Newswires, which provides real-time business news and information to hundreds of thousands of financial professionals around the world.  In 2013, Dow Jones created DJX, an online product that includes original news and analysis from all Dow Jones-owned publications and other news and information resources.

14.    With only a few carefully chosen exceptions, Dow Jones serves as the exclusive distributor of its original news content and does not authorize third parties to distribute

4

that content.  Dow Jones's vigilant oversight of the channels by which its content is distributed adds significant value to Dow Jones's products and services, which in turn supports Dow Jones's continuing ability to investigate, report, and publish the news.

**B.      The DJX Product and DJ Dominant**

15.      Among other things, DJX provides real-time online news and analysis to paid subscribers via live, streaming newsfeeds of headlines and articles generated by Dow Jones. Users can customize their newsfeeds based on their interests or view newsfeeds curated by Dow Jones.

16.      One of these curated newsfeeds, called DJ Dominant, is a critical element of DJX.  DJ Dominant compiles in one place exclusive real-time news and analysis from Dow Jones and *The Wall Street Journal* that can impact markets and that is available nowhere else in the world.

17.      DJ Dominant appears on a subscriber's DJX screen as a series of scrolling headlines listed in reverse chronological order.  Some of the headlines are hyperlinks to full-text news articles; others are stand-alone headlines that themselves contain the news Dow Jones is reporting.  When its reporters break news, Dow Jones typically posts to DJ Dominant one or more stand-alone headlines to rapidly communicate hot news to DJX subscribers.  Dow Jones then generally supplements those headlines with full-text articles shortly thereafter.  DJ Dominant draws on news developed by reporters for Dow Jones's various publications and destined for subsequent publication in different Dow Jones services tailored to specific markets or areas of interest, including *The Wall Street Journal* and Dow Jones Newswires.

18.      DJ Dominant is a time-advantaged service.  By design, it contains Dow Jones's hottest, most time-sensitive news before Dow Jones publishes that news anywhere else. Dow Jones has a long history of this kind of tiered distribution of news, and has long charged a

5

6621077v.1

premium price to customers who want to receive news more quickly. Dow Jones's hot news is typically published first on DJ Dominant via DJX, then to Dow Jones Newswires customers who have not subscribed to DJX, then to WSJ.com, and then in the print edition of *The Wall Street Journal* the next day.

19.     At its core, DJ Dominant is a collection of Dow Jones's most valuable and proprietary news and analysis, made more valuable by being available exclusively to DJX subscribers before others see it.  "Scoops" of the sort that are posted on the DJ Dominant feed are often the product of considerable newsgathering efforts by one or more Dow Jones journalists.

20.     The electronic delivery of business and financial news is a highly competitive business in which vendors (including Dow Jones) tout their ability to break news that can impact markets before other sources do.  Dow Jones highlights this feature for current and potential subscribers, emphasizing that DJX can help put them in position to identify and analyze investing, trading, and hedging opportunities and capitalize on them before their competitors.

21.     Customers subscribe directly to DJX by entering into a paid subscription agreement with Dow Jones.  The agreement permits users to "access, review, download and print" information from DJX for the user's own use.  The agreement requires, however, that users not "reproduce, distribute, display, sell, publish, broadcast, or circulate" DJX content to any third party, or make that content available for any such use.  All subscribers to DJX must sign either the Dow Jones Master Products Terms and Conditions (the "Master Agreement") or similar contractual terms restricting their ability to redistribute DJX content.

**C.     Ransquawk**

22.     A "squawk" is an online service that traces its lineage to "squawk boxes," physical intercom speakers that were once found on trading desks in investment banks and stock brokerages that announced news and other information to those working on the trading desk.

6

Today, "squawk" services provide audio feeds of breaking, market-shifting news over the Internet.

23.     Ransquawk operates a commercial website (ransquawk.com) that claims to "deliver a faster, clearer unbiased real-time voice & text newsfeed." It claims to be the "[w]orld's #1 squawk covering US, Europe and Asia-Pac 24 hours a day," states that "8/10 of the world's largest banks use Ransquawk," and boasts that Ransquawk "provid[es] unmatched, instant coverage of Equities, Fixed Income, Energy & Forex." The site alleges that Ransquawk is "the best real-time audio squawk for traders," one of the same customer bases Dow Jones targets with its DJX product.

24.     Ransquawk's main offering is a subscription-based software application accessed over the Internet and through a mobile app. It includes two components: a live audio "squawk" broadcast (the "audio" component) and an auto-updating text-based newsfeed (the "text" component) that allows subscribers to "see what [they] hear." Ransquawk's website explains that its "team of analysts monitors over 100 news sources so you don't have to."

25.     The front page of ransquawk.com includes a "Client testimonies" section in which a Chicago-based client of Ransquawk states that "RANsquawk is the news source that we use that gives us the information that matters now. It aggregates all the major news wires and delivers the information that counts."

26.     How does Ransquawk provide such a popular service? Its business model is as simple as it is illegal: Ransquawk's audio and text services are based on the systematic unauthorized reproduction and redistribution of news content published by Dow Jones, and undoubtedly other news content providers as well.

**D.     Ransquawk's "Hot News" Misappropriation of Dow Jones's Headlines and Articles**

27.     Ransquawk systematically copies and retransmits verbatim, or nearly

verbatim, content from the DJ Dominant newsfeed that was reported, written, and edited by journalists working for *The Wall Street Journal*, *Barron's*, Dow Jones Newswires, and other Dow Jones publications. Ransquawk has done so without any license from Dow Jones, and Dow Jones would not have agreed to such a license had Ransquawk sought to legitimately procure one.

28.    Ransquawk's audio service broadcasts DJ Dominant content to its subscribers within mere moments of the content appearing on DJX. Indeed, Ransquawk often broadcasts DJ Dominant headlines within five seconds or less of the original posting on DJX. On one recent occasion, a breaking news headline announcing Twitter's initial public stock offering – which Dow Jones first published exclusively on DJX -- was broadcast word-for-word by Ransquawk through its audio feed **two** seconds after running on DJ Dominant – and before Dow Jones published that news through any other channel.

29.    Ransquawk's text service similarly copies DJ Dominant news that has just been published on DJX. Ransquawk's text reproductions of Dow Jones's headlines typically appear within one or two minutes of that news having been posted on DJX.

30.    Ransquawk does not credit Dow Jones for any of the hot news it copies from DJX, instead crediting all Dow Jones stories (along with, upon information and belief, those copied from other third party content providers) to "Source: Newswires."

31.    The chart attached to the Complaint as **Exhibit A** is illustrative (but not exhaustive) of the DJX content Ransquawk copied through its audio and/or text services within seconds or minutes after it was posted on the DJ Dominant newsfeed between October 17, 2013 and November 13, 2013. (However, Dow Jones's monitoring of Ransquawk during this period was not continual; in particular, Dow Jones did not monitor Ransquawk's activity from October 31 through November 5.)

32.     Dow Jones is presently without knowledge sufficient to specifically identify every instance of Ransquawk's verbatim or near-verbatim copying of its news content or to allege when Ransquawk's unauthorized republication commenced.  Dow Jones expects that discovery will serve to identify many additional examples of Ransquawk's free-riding on Dow Jones's significant effort and expense to gather, report, write, edit, and disseminate the news that appears on DJX.

33.     The timeliness of business and financial news reporting is essential to many subscribers to the DJX service – particularly the traders both Dow Jones and Ransquawk target with their breaking news products.  Ransquawk competes directly with Dow Jones's DJX product for subscriptions by end-users.

34.     The DJX and Ransquawk products are marketed and sold to some of the same customer base.  Because Ransquawk distributes news copied verbatim from DJX in competition with DJX without incurring the costs Dow Jones incurs to originate the news, Ransquawk is able to offer its products and services at a substantially lower price than Dow Jones can offer similar products and services.  Ransquawk's actions divert business opportunities for Dow Jones and, for many potential customers, threaten to satisfy the demand for breaking business news that would otherwise be fulfilled by DJX.  Ransquawk's free-riding on Dow Jones's extensive newsgathering efforts is likely to undermine Dow Jones's economic incentive to invest in the costly process of reporting time-sensitive news.

**E.     Ransquawk Flouts Dow Jones and Its Attorneys Falsely Deny the Illicit Activity**

35.     After being alerted to Ransquawk's copying of exclusive Dow Jones content seconds after it was posted on DJX, Dow Jones investigated Ransquawk's actions through a series of free trial subscriptions to Ransquawk's service.  Those trial subscriptions were made available by Ransquawk to New York residents who, as part of signing up for the trial, had to

9

identify themselves as U.S. residents living in the Eastern Time Zone and provide phone numbers – all of which had New York area codes.

36.     After observing and recording Ransquawk's activities for a number of weeks, Dow Jones through its attorneys sent a "cease-and-desist" letter to Ransquawk on November 11, 2013.  That letter is attached to this Complaint as **Exhibit B**.  The letter informed Ransquawk that it was copying DJX content in a manner that constituted "hot news" misappropriation and in breach of, or tortious interference with, Dow Jones's subscription agreements.  Dow Jones demanded that Ransquawk cease its unauthorized copying of Dow Jones's content and remove Dow Jones's content from its computers.

37.     The cease-and-desist letter was emailed to one of Ransquawk's principals, to an email address provided over the telephone by Ransquawk, on November 11.  For at least the two days thereafter, Ransquawk willfully flouted Dow Jones's rights and continued reproducing and squawking DJX content via both its audio and text services.  Upon information and belief, Ransquawk proceeded to block all further efforts by Dow Jones or its agents and attorneys to monitor Ransquawk's continued exploitation of Dow Jones news.

38.     Despite Ransquawk's apparent efforts to block Dow Jones from continuing to monitor Ransquawk's service, Dow Jones has been able to determine that in the time period subsequent to the delivery of the cease-and-desist letter and continuing to the present, Ransquawk continues to copy DJ Dominant content through its text service.  DJ Dominant content routinely appears on Ransquawk's newsfeed with a time stamp that is within a minute or two of it being posted on DJX.  Upon information and belief, Ransquawk has also continued its practice of rebroadcasting Dow Jones's content through its audio service, and that conduct is ongoing as of the date of filing.

39.     Ransquawk responded to Dow Jones through its solicitors, MacRae & Co LLP, on November 26, 2013.  That letter is attached to this Complaint as **Exhibit C**.  The letter admitted that Ransquawk "has not entered directly or indirectly into a subscriber agreement for the DJX service."  The letter "totally denie[d]" that Ransquawk took any material directly from DJX; instead, it claimed Ransquawk obtained the content via:  (1) "various twitter sources"; (2) instant messages from journalists at Dow Jones and in investment banks and brokerages in New York and Chicago; (3) other "squawk" services, "all of whom seem to subscribe to Dow Jones news"; and (4) "various spread betters and FX brokers that carry Dow Jones news."  Ransquawk also admitted that it does not cite Dow Jones when copying its stories, and claimed that this was because Ransquawk "cannot be sure that the story comes originally from Dow Jones."

40.     The assertions and denials of Ransquawk's counsel are not worthy of belief because they are not just implausible, but in many instances physically impossible.  Ransquawk's audio service frequently replicates DJX content word for word within five seconds or less of its being posted on DJ Dominant.  If Ransquawk's claims were true, a third party would have to have a DJX subscription that it is constantly reviewing in case any breaking news is posted.  The third party would then have to transcribe Dow Jones's content onto its own service (or an instant messenger program).  The third party would then have to publish that content online (or send the message).  Ransquawk would then have to read the third party's copy of Dow Jones's news.  As Ransquawk does not copy 100% of the content posted on the DJ Dominant feed, a Ransquawk employee would then have to determine whether to reproduce the Dow Jones news item.  And finally, Ransquawk would have to broadcast that content to its subscribers through its audio service – all within five seconds or less of Dow Jones's original publication of the news to DJX.

11

41.     As advanced as technology is in 2013, it is entirely implausible that Ransquawk, a company that monitors "over 100 news sources" according to its website, could take all of those actions in five seconds or less (particularly as at least half of the process involves a third party). The only way that Ransquawk could possibly copy DJX news with such rapidity is by watching news break live on the DJ Dominant feed and then reading the headline verbatim out loud to its subscribers.

42.     Even if Ransquawk were somehow obtaining Dow Jones news from third party sources, Ransquawk knows that it is doing so by inducing breach of or interfering with contract because none of the alleged sources its counsel enumerated in the November 26, 2013 letter is authorized to redistribute Dow Jones news.

## FIRST CLAIM FOR RELIEF
### (Hot News Misappropriation)

43.     Dow Jones re-alleges and incorporates by reference paragraphs 1 through 42 of this Complaint.

44.     Through substantial global efforts and at a significant cost to Dow Jones, Dow Jones gathers and reports breaking news to its customers in a timely fashion through its DJX product.

45.     The newsworthy information that Dow Jones gathers and reports is valuable to many of its customers in large part because of its time-sensitive nature.

46.     Ransquawk's systematic copying and redistribution of Dow Jones's breaking news content constitutes free riding on Dow Jones's significant and costly efforts to gather and report time-sensitive, newsworthy information.

47.     Ransquawk copies verbatim or nearly verbatim Dow Jones's breaking news content without undertaking any creative or journalistic efforts of its own, does so at

12

precisely the point where Dow Jones's profit is to be reaped, and sells the copied materials to Ransquawk's customers in direct competition with Dow Jones, thus diverting a material portion of Dow Jones's profit.

48.     If Ransquawk and similar entities continue to free-ride on Dow Jones's costly efforts to gather and report breaking news stories and to maintain the worldwide infrastructure necessary for doing so, Dow Jones's incentives for undertaking these costly newsgathering efforts will be significantly reduced, if not entirely eliminated.

49.     Ransquawk's actions constitute actionable misappropriation of hot news.

50.     Ransquawk's actions were undertaken in bad faith, maliciously, willfully, wantonly, and in utter disregard of Dow Jones's rights.

51.     As a consequence of Ransquawk's misappropriation of hot news, Dow Jones is entitled to recover compensatory and punitive damages, in an amount to be determined at trial but no less than $5 million.

52.     As a consequence of Ransquawk's misappropriation of hot news, Dow Jones is entitled to disgorgement to it of Ransquawk's profits occasioned by its unlawful conduct.

53.     The persistent misappropriation of Dow Jones content by Ransquawk is not fully compensable in money damages.  If Dow Jones were relegated solely to recovering damages for this activity, a compulsory license will, in effect, have been imposed on Dow Jones. Dow Jones is therefore entitled, in addition to damages for past misappropriation, to injunctive relief to restrain Ransquawk from continuing its acts of misappropriation.

## SECOND CLAIM FOR RELIEF

### (Tortious Interference With Contractual Relationships)

54.     Dow Jones re-alleges and incorporates by reference paragraphs 1 through 42 of this Complaint.

55.     Dow Jones is not aware of precisely how Ransquawk acquires access to its DJX product, though Ransquawk has admitted that it does not have a DJX subscription. Accordingly, the factual contentions on which this claim is based are pleaded upon information and belief, and Dow Jones believes they will likely have evidentiary support after a reasonable opportunity for further investigation and discovery.

56.     Dow Jones carefully regulates by contract the terms on which persons may electronically access, use, and redistribute the news it publishes.  Accordingly, it is highly probable that the Dow Jones content distributed by Ransquawk was acquired in breach of such contractual terms.

57.     Users of DJX must agree to, and are bound by, the terms of the Master Agreement and the DJX Terms of Use (together, the "Dow Jones Terms of Use"), which restrict use and redistribution of Dow Jones's content.

58.     The Dow Jones Terms of Use constitute valid and enforceable contracts.

59.     The restrictions on redistribution and storage of Dow Jones content found in the Dow Jones Terms of Use are common in the electronic news-distribution business, and Ransquawk, as a participant in that business, knew of the existence of such contractual restrictions.  If it did not already have actual knowledge of those contractual restrictions, Ransquawk gained actual knowledge of them when it received Dow Jones's November 11, 2013 cease and desist letter (**Exhibit B**).

60.     By the necessary implication of the foregoing, in order to obtain access to Dow Jones's content, Ransquawk or one of its agents or representatives acting at Ransquawk's direction induced other persons to grant Ransquawk access to DJX and provide Ransquawk with Dow Jones's content in violation of the Dow Jones Terms of Use.

14

61.   By reproducing Dow Jones's content and redistributing it to its customers without Dow Jones's permission or a license to do so, Ransquawk has, with knowledge of the existence of the express contractual restrictions of the Dow Jones Terms of Use and without justification, intentionally induced a third party to breach the Dow Jones Terms of Use by providing Ransquawk with access to Dow Jones's content or by distributing Dow Jones's content to Ransquawk.

62.   By copying and redistributing Dow Jones's news content, Ransquawk has induced a third party to breach the Dow Jones Terms of Use.

63.   Ransquawk's inducement of a third party to breach his or her contract, has caused and continues to cause significant damage to Dow Jones, not all of which is readily calculable.

64.   Ransquawk's persistent interference with Dow Jones's contractual relationships even after being specifically placed on notice of the relevant terms of those contracts constitutes willful misconduct not adequately compensable in money damages.  Accordingly, Dow Jones is entitled to injunctive relief restraining Ransquawk from continuing such misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Dow Jones demands judgment:

A.   awarding to Dow Jones its actual compensatory and punitive damages with respect to each cause of action in an amount to be determined at trial but not less than $5 million;

6621077v.1

B.    requiring disgorgement to Dow Jones of the profits made by Ransquawk attributable to its unlawful conduct on all Claims for Relief to the extent not taken into account in computing Dow Jones's actual damages;

C.    preliminarily and permanently enjoining Ransquawk from continuing to misappropriate Dow Jones's hot news and continuing to induce breach of and interfere with Dow Jones's' contracts with its subscribers and employees; requiring Ransquawk to purge from its computers and other facilities and records any material so misappropriated from Dow Jones and providing Dow Jones with a feed to Ransquawk's news vehicles for the limited purpose of monitoring without obstruction Ransquawk's compliance with said injunction;

D.    awarding Dow Jones its costs in this action, including reasonable attorney's fees;

E.    directing Ransquawk to file with this Court within 30 days after the entry of final judgment a written statement, under oath, setting forth in detail the manner in which it has complied with the Court's judgment; and

F.    awarding Dow Jones such other and further relief as this Court deems just, proper, and equitable.

Dated:    New York, New York
          January 9, 2014

Respectfully submitted,

_____
Robert P. LoBue
Jonah M. Knobler
Adam E. Pinto
PATTERSON BELKNAP WEBB & TYLER LLP

16

Of counsel:

Jason Conti
Craig Linder
Dow Jones & Company, Inc.

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues as to which jury trial is available.

Respectfully submitted,

_____

Robert P. LoBue
Jonah M. Knobler
Adam E. Pinto
PATTERSON BELKNAP WEBB & TYLER LLP

17

6621077v.1

Exhibit A

The chart below is illustrative (but not exhaustive) of the DJX content Ransquawk copied through its audio and/or text services within seconds or minutes after it was posted on the DJ Dominant newsfeed between October 17, 2013 and November 13, 2013.  (However, Dow Jones's monitoring of Ransquawk during this period was not continual; in particular, Dow Jones did not monitor Ransquawk's activity from October 31 through November 5.)

| Dow Jones's Exclusive DJ Dominant Headline | Moved on DJX | Squawked by Ransquawk | Reprinted by Ransquawk | Date |
|---|---|---|---|---|
| Brazil's Central Bank Unlikely To Stop Daily Swap Auctions | 12:35 p.m. | No | 12:35 p.m. | Thursday, 10/17/2013 |
| ICE Plans To Spin Off Euronext After Buying NYSE Euronext | 12:52 p.m. | 12:52 p.m. (within 1 minute of DJ Dominant post) | No | Thursday, 10/17/2013 |
| U.S. Rating Downgrade Unlikely In Next Two Years – Moody's Hess | 1:38 p.m. | 1:38 p.m. (within 5 seconds) | 1:38 p.m. | Thursday, 10/17/2013 |
| Lenovo Actively Looking At Blackberry | 2:40 p.m. | 2:40 p.m. (within 8 seconds) | 2:41 p.m. | Thursday, 10/17/2013 |
| Fund Manager Mobius Plans To Buy Greek Equities For First Time In A Decade | 1:04 p.m. | 1:04 p.m. (within 6 seconds) | 1:05 p.m. | Friday, 10/18/2013 |
| J.P. Morgan Chase & Co. Reaches Tentative Settlement With FHFA | 3:46 p.m. | No | 3:47 p.m. | Friday, 10/18/2013 |
| Radioshack Secures New Financing From GE Capital | 3:34 p.m. | No | 3:35 p.m. | Monday, 10/21/2013 |
| WSJ's Hilsenrath: Jobs Report Keeps Fed On Hold For Now | 10:09 a.m. | No | 10:09 a.m. | Tuesday, 10/22/2013 |
| Uralkali Ramps Up Potash Production Significantly Despite Possible Sale | 10:17 a.m. | No | 10:18 a.m. | Tuesday, 10/22/2013 |
| Men's Wearhouse Is Pursuing Possible Purchase Of Shoe Retailer Allen Edmonds | 3:57 p.m. | No | 3:58 p.m. | Tuesday, 10/22/2013 |
| Moody's, Fitch Analysts See Ireland Agreeing Precautionary Support For Bailout Exit | 8:21 a.m. | 8:21 a.m. (within 30 seconds) | 8:22 a.m. | Thursday, 10/24/2013 |
| Twitter IPO Price Range Expected To Be Set This Week | 12:01 p.m. | 12:01 p.m. (within 2 seconds) | 12:02 p.m. | Thursday, 10/24/2013 |
| Lazard Cap Markets, A Former Lazard Ltd. Unit, Considers Job Cuts Amid Slowdown | 3:42 p.m. | 3:42 p.m. (within 6 seconds) | No | Thursday, 10/24/2013 |

| | | | | |
|---|---|---|---|---|
| Boeing, Lockheed Martin To Bid Jointly On New Air Force Bomber Program | 11:29 a.m. | No | 11:29 a.m. | Friday, 10/25/2013 |
| Yellen Confirmation Hearing Expected to Happen In November | 2:51 p.m. | 2:51 p.m. (within 10 seconds) | No | Friday, 10/25/2013 |
| Fannie, Freddie Regulator To Announce $4 Billion Settlement With J.P. Morgan As Soon As This Afternoon | 4:00 p.m. | 4:00 p.m. (within 30 seconds) | 4:00 p.m. | Friday, 10/25/2013 |
| Polish Rate Setter Hausner: MPC Should Expand Forward Guidance | 9:56 a.m. | 9:56 a.m. (within 7 seconds) | 9:56 a.m. | Monday, 10/28/2013 |
| BofA Analysts See Twitter Unprofitable Through 2015 | 1:05 p.m. | No | 1:05 p.m. | Monday, 10/28/2013 |
| Italy Minister: Government Can't Solve Deep Economic Problems In Months | 8:18 a.m. | 8:18 a.m. (within 6 seconds) | No | Tuesday, 10/29/2013 |
| Goldman To Get 38.5% Of Twitter IPO Fee Pool | 10:13 a.m. | 10:13 a.m. (within 5 seconds) | 10:13 a.m. | Tuesday, 10/29/2013 |
| Orange Set Mid-November Deadline For Binding Offers To Buy Its Dominican Unit | 12:44 p.m. | No | 12:44 p.m. | Tuesday, 10/29/2013 |
| JP Morgan's $13 Billion Deal With Justice Department At Risk Of Collapse | 1:23 p.m. | No | 1:23 p.m. | Tuesday, 10/29/2013 |
| Blackberry Executives Met With Facebook Last Week To Gauge Interest In Potential Bid | 1:46 p.m. | No | 1:46 p.m. | Tuesday, 10/29/2013 |
| Sanofi's China Sales Slowed Markedly In 3Q | 9:53 a.m. | No | 9:53 a.m. | Wednesday, 10/30/2013 |
| Fed Sees Little Change In Its Assessment Of Economy – WSJ's Hilsenrath | 2:18 p.m. | 2:18 p.m. (within 3 seconds) | 2:18 p.m. | Wednesday, 10/30/2013 |
| AMR, US Airways Preparing Possible Settlement Proposal To DOJ Over Merger Antitrust Case | 3:31 p.m. | 3:31 p.m. (within 11 seconds) | 3:32 p.m. | Wednesday, 10/30/2013 |
| Twitter IPO Likely To Price At $25 To $28 A Share | 12:54 p.m. | 12:54 p.m. (within 8 seconds) | No | Wednesday, 11/6/2013 |
| Twitter Would Raise $2.3 Billion At Pricing Of $28/Share | 12:57 p.m. | 12:57 p.m. (within 15 seconds) | No | Wednesday, 11/6/2013 |
| BP Talking To Libya's Noc Over Ghadames Blocks | 2:27 p.m. | 2:27 p.m. (within 10 seconds) | 2:27 p.m. | Wednesday, 11/6/2013 |
| Bundesbank President Weidmann Opposed ECB Rate Cut | 11:07 a.m. | No | 11:07 a.m. | Thursday, 11/7/2013 |
| Barrick Gold Chairman Peter Monk Won't Stand For Reelection At Next AGM | 12:15 p.m. | No | 12:16 p.m. | Friday, 11/8/2013 |

| | | | | |
|---|---|---|---|---|
| BofA, Freddie In Settlement Talks To Resolve Mortgage 'Put-Backs' | 1:24 p.m. | 1:24 p.m. (within 10 seconds) | 1:25 p.m. | Monday, 11/11/2013 |
| EU Sees Current-Account Surplus As Potential 'Excessive' Imbalance | 3:48 p.m. | 3:48 p.m. (within 6 seconds) | 3:49 p.m. | Monday, 11/11/2013 |
| Hulu In Talks For Tieups With Pay TV Providers | 11:28 a.m. | No | 11:31 a.m. | Tuesday, 11/12/2013 |
| Microsoft Overhauls Its 'Stack Ranking' Employee Review And Pay Program | 12:40 p.m. | 12:40 p.m. (within 8 seconds) | No | Tuesday, 11/12/2013 |
| Sprecher To Be CEO Of Combined ICE, NYSE Euronext | 3:59 p.m. | No | 4:02 p.m. | Tuesday, 11/12/2013 |
| Snapchat Spurned Facebook Acquisition Offer | 1:34 p.m. | 1:34 p.m. (within 20 seconds) | No | Wednesday, 11/13/2013 |

**Exhibit B**

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

November 11, 2013

By Certified Mail - Return Receipt Requested and E-mail

Robert P. LoBue
Partner
(212) 336-2596
rplobue@pbwt.com

Real-Time Analysis and News, Ltd. (d/b/a "Ransquawk")
25 Copthall Avenue
London
EC2R 7BP
United Kingdom

Attn.:      Ranvir Singh
           Matthew Cheung

Re:      <u>Infringement of Dow Jones's News Articles and Headlines</u>

Dear Sirs:

We are litigation counsel for Dow Jones & Company, Inc. ("Dow Jones"), which owns and publishes *The Wall Street Journal* and the related news website WSJ.com, as well as other publications and media services including *Barron's*, Factiva, and Dow Jones Newswires, all of which are available as components of Dow Jones's online DJX product.  Our client is deeply concerned that Real-Time Analysis and News, Ltd. ("Ransquawk") is committing pervasive and ongoing infringement of Dow Jones's copyrights and misappropriating its news content, as well as breaching or inducing the breach of Dow Jones's subscription agreements.

Specifically, we have learned that Ransquawk offers an audio streaming service and a newsfeed service to clients, both of which transmit headlines and stories from news articles directed to securities traders and others.  The service is offered at ransquawk.com and via a mobile app.  Both services regularly provide verbatim headlines and, at times, news article text copied from Dow Jones's DJ Dominant newswire, which exclusively carries high-value proprietary content from *The Wall Street Journal* on DJX before Dow Jones publishes it through any other channel.  The copied headlines are "squawked" out verbatim through the audio service within seconds of their being posted exclusively on the DJ Dominant portion of DJX, and headlines and excerpts are copied on Ransquawk's newsfeed within a minute or two of being posted on DJX.  Further, we are aware that Ransquawk is engaging in this conduct multiple times per day every business day and is redistributing Dow Jones news to users in the United States.

6537918v.1

November 11, 2013
Page 2

The following chart is illustrative (but not exhaustive) of our recent observations of Ransquawk's unauthorized reproduction of Dow Jones news (all times Eastern):

| Dow Jones's Exclusive DJX Headline | Moved on DJX | Squawked by Ransquawk | Reprinted by Ransquawk | Date |
|---|---|---|---|---|
| U.S. Rating Downgrade Unlikely In Next Two Years -- Moody's Hess | 1:38 p.m. | 1:38 p.m. | 1:38 p.m. | Thursday, 10/17/2013 |
| Lenovo Actively Looking At Blackberry | 2:40 p.m. | 2:40 p.m. | 2:41 p.m. | Thursday, 10/17/2013 |
| Fund Manager Mobius Plans to Buy Greek Equities For First Time In A Decade | 1:04 p.m. | 1:04 p.m. | 1:05 p.m. | Friday, 10/18/2013 |
| Moody's, Fitch Analysts See Ireland Agreeing Precautionary Support for Bailout Exit | 8:21 a.m. | 8:21 a.m. | 8:22 a.m. | Thursday, 10/24/2013 |
| Twitter IPO Price Range Expected to Be Set This Week | 12:01 p.m. | 12:01 p.m. | 12:02 p.m. | Thursday, 10/24/2013 |
| Fannie, Freddie Regulator to Announce $4 Billion Settlement With J.P. Morgan As Soon As This Afternoon | 4:00 p.m. | 4:00 p.m. | 4:00 p.m. | Friday, 10/25/2013 |
| Polish Rate Setter Hausner: MPC Should Expand Forward Guidance | 9:56 a.m. | 9:56 a.m. | 9:56 a.m. | Monday, 10/28/2013 |
| Goldman to Get 38.5% of Twitter IPO Fee Pool | 10:13 a.m. | 10:13 a.m. | 10:13 a.m. | Tuesday, 10/29/2013 |
| Fed Sees Little Change In Its Assessment of Economy -- WSJ's Hilsenrath | 2:18 p.m. | 2:18 p.m. | 2:18 p.m. | Wednesday, 10/30/2013 |
| AMR, US Airways Preparing Possible Settlement Proposal to DOJ Over Merger Antitrust Case | 3:31 p.m. | 3:31 p.m. | 3:32 p.m. | Wednesday, 10/30/2013 |

In addition to the reproduction of exclusive Dow Jones headlines, Ransquawk has also copied and distributed substantial amounts of article text from at least one original DJ Dominant news article (*see* WSJ's Hilsenrath: Key Passages From Fed Minutes Show Officials Torn On Tapering (moved on DJX at 2:00 p.m. on October 9, 2013; reprinted by Ransquawk at 2:01 p.m. on October 9, 2013)).

These acts are to our client's knowledge unlicensed and constitute violations of the Copyright Act of 1976, codified at Title 17 of the United States Code, and corresponding provisions of other national copyright laws. Ransquawk's reproduction of copies and excerpts of DJX articles in its audio and news feeds that are distributed to its clients infringes Dow Jones's exclusive rights of reproduction, *see* 17 U.S.C. § 106(1), distribution, *see* 17 U.S.C. § 106(3), public performance, *see* 17 U.S.C. § 106(4), public display, *see* 17 U.S.C. § 106(5) and analogous provisions of non-U.S. law. In addition, to the extent that Ransquawk induces its clients to further disseminate DJX articles and article excerpts to their employees and clients without Dow Jones's authorization, then Ransquawk is liable for contributory copyright

6537918v.1

November 11, 2013
Page 3

infringement and/or inducement to infringement.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 934-37 (2005).

Ransquawk's conduct also constitutes common-law "hot news" misappropriation and unfair competition.  *See International News Service v. Associated Press*, 248 U.S. 215 (1918); *National Basketball Association v. Motorola*, 105 F.3d 841 (2d Cir. 1997); *cf. Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876 (2d Cir. 2011).  Ransquawk's copying of exclusive DJ Dominant content within seconds of that news appearing on DJX free-rides on the journalistic efforts of Dow Jones and, if not restrained, would render it difficult if not impossible for news content originators such as Dow Jones to continue to provide their journalistic services.

If Ransquawk has or has access to a subscription to the DJX service, it is in breach of the subscription contract that allows for its access to DJX, as Dow Jones does not permit DJX customers to disseminate its content in this manner.  If Ransquawk is receiving DJX content through a third party, it is inducing that third party to breach its contract with Dow Jones, because Dow Jones does not allow any of its customers to redistribute or permit their clients to reproduce Dow Jones's news content in the manner that Ransquawk has done.

Ransquawk's copyright infringement entitles Dow Jones to damages under U.S. law, including, at Dow Jones's election, Dow Jones's actual damages and any additional profits Ransquawk has made from its infringement, or statutory damages of up to $150,000 per work infringed if the infringement was willful, as Ransquawk's infringement appears to be.  *See* 17 U.S.C. § 504(a)-(c).

If Ransquawk is redistributing Dow Jones news that it receives not from DJX but from another Dow Jones distribution vehicle, such as the Dow Jones Newswires, Dow Jones's complaint is the same:  all Dow Jones news is protected by copyright and common law, and pursuant to contract, from unauthorized redistribution.

If Ransquawk believes it has been licensed by Dow Jones to reproduce Dow Jones's news content as described above, we demand to know the basis for such claim.  If not, we hereby demand that Ransquawk immediately cease and desist from all of the above-mentioned unauthorized uses of Dow Jones's "hot news" and copyrighted works, as well as any other unlawful uses of Dow Jones's "hot news" and copyrighted works, including headlines, news content, and article excerpts from DJX and any other Dow Jones publications and services, such as *The Wall Street Journal*, *Barron's*, MarketWatch, and Dow Jones Newswires (collectively, "Dow Jones Content").  We also demand that Ransquawk immediately remove all Dow Jones Content from all computer systems, web sites, mobile apps, and other facilities within its control.

Furthermore, to assist in determining the harm that has been done by the aforementioned activities of Ransquawk, we demand that, within ten days, Ransquawk produce to us the following written undertakings:

November 11, 2013
Page 4

(1)   confirmation that Ransquawk has complied with each of the preceding demands;

(2)   an explanation of the means by which Ransquawk has accessed Dow Jones Content;

(3)   the identities of all clients to whom Ransquawk provides or has provided Dow Jones Content in connection with its audio service and newsfeed;

(4)   all contracts (or, in the absence of a formal contract, documents sufficient to show and describe all arrangements) for the provision of Ransquawk's audio service and newsfeed between Ransquawk and those clients to whom Ransquawk has provided Dow Jones Content;

(5)   the quantity of revenue and profit Ransquawk has realized from offering its audio and newsfeed services to clients who have received Dow Jones Content;

(6)   the date on which Ransquawk began providing Dow Jones Content to its clients, by audio "squawk," newsfeed, or otherwise;

(7)   the title and publication date of each news item and article excerpt (if applicable) from DJX, and/or other Dow Jones Content, that Ransquawk has provided to its clients (whether or not such news items or excerpts are still available via any service provided by Ransquawk), as well as the identity of all clients to which Ransquawk provided each such news item or article excerpt;

(8)   a complete description of all platforms, services, devices and methods by which Ransquawk has distributed Dow Jones Content to its clients, or otherwise made Dow Jones Content available to its clients, including but not limited to the services referred to in this letter;

(9)   a copy of any contract or license, if any, that Ransquawk contends permits it to access Dow Jones Content directly or through a Dow Jones distributor.

Upon receipt of this information, we will then be in a position to determine the amount of compensation that is required for Ransquawk's unauthorized use of Dow Jones's Content. If no response is received within ten days, Dow Jones is fully prepared to pursue all available remedies at law and equity. This letter does not purport to be a complete

November 11, 2013
Page 5

statement of the relevant facts or law, and is without prejudice to Dow Jones's legal and
equitable rights, all of which are expressly reserved.

Very truly yours,

Robert P. LoBue

Exhibit C



## MACRAE & CO LLP
### SOLICITORS

| | | |
|---|---|---|
| Our Ref | : | JAT/30-047/jt |
| Your Ref | : | |
| Direct e-mail | : | julian.turnbull@macraeco.com |

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
**New York**
NY 10036-6710
U.S.A.

26 November 2013

Dear Sirs,

<u>Re: Dow Jones's News – Realtime Analysis & News Ltd</u>

We act for Realtime Analysis & News Limited and we refer to your letter to our Client dated 11 November 2013.

We confirm that our Client has not entered directly or indirectly into a subscriber agreement for the DJX service.

Our Client totally denies that it has taken any material directly from your client's DJX services and re-transmitted on its RANsquawk service or its news feed service from the UK.

The material which you have set out on page 2 of your letter has been made available to our Client in the UK via:

- various twitter sources;
- instant messenger services – i.e. contacts ranging from journalists within Dow Jones to traders/brokers at various investment banks and brokerages both here and in the US (predominantly New York and Chicago);
- services like Tradethenews.com, Livesquawk.com and ITCmarkets.com which we have access to, all of whom seem to subscribe to Dow Jones news;
- various spread betters and FX brokers that carry Dow Jones news.

Our Client does not cite Dow Jones on news stories because it cannot be sure that the story comes originally from Dow Jones.

Further our Client denies that it has infringed your Client's copyright. Under section 30 of the Copyright, Designs and Patent Act 1988 there is a right to use copyright material for news reporting. We would direct you to sections 30(2) and (3) which state:

*"(2)     Fair dealing with a work (other than a photograph) for the purpose of reporting current events does not infringe any copyright in the work provided that (subject to subsection (3)) it is accompanied by a sufficient acknowledgement.*

*(3)     No acknowledgement is required in connection with the reporting of current events by means of a sound recording, film, broadcast or cable programme."*

In the UK there is no common law act of "hot news misappropriation" or "unfair competition".

Should your Client issue any proceedings against our Client, they will be vigorously defended.

Yours faithfully,