UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOW JONES & COMPANY, INC.,

                Plaintiff,

- against -

REAL-TIME ANALYSIS & NEWS, LTD. (d/b/a "Ransquawk"),

                Defendant.

14 Civ. 00131 (JMF)

**DECLARATION OF ADAM E. PINTO IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

---

Adam E. Pinto, under penalty of perjury pursuant to 28 U.S.C. § 1746, declares:

1. I am an associate at Patterson Belknap Webb & Tyler LLP ("Patterson Belknap"), counsel for defendant Dow Jones & Company, Inc. ("Dow Jones") in this matter. This declaration is respectfully submitted in support of Dow Jones's Motion for Default Judgment.

2. I annex as Exhibit A the complaint in this action.

3. On January 10, 2014, one day after the summons and complaint were filed with this court, I e-mailed a courtesy copy of the complaint to the attorneys for Real-Time Analysis & News, Ltd. (d/b/a "Ransquawk"), MacRae & Co LLP ("MacRae"). My e-mail also included a letter from Robert P. LoBue, a partner at Patterson Belknap, asking whether MacRae would accept service of the summons and complaint. I annex as Exhibit B a copy of that January 10, 2014 e-mail and the attached letter. We were aware that MacRae represented defendant in this matter because that firm had responded to Dow Jones's cease and desist demand in a letter dated November 26, 2013 and annexed to the complaint as Exhibit C.

4. Julian Turnbull, a solicitor at MacRae, responded on January 13, 2014, stating that his "client will need to consult US counsel and we will not be in a position to respond

to your request on the issue of accepting service until then." Patterson Belknap did not hear back from Mr. Turnbull regarding MacRae accepting service. I annex as Exhibit D a copy of Mr. Turnbull's January 13, 2014 e-mail.

5. On February 11, 2014, Mr. LoBue sent an e-mail to Mr. Turnbull asking whether Ransquawk intended to appear and defend this action and stating that Dow Jones would pursue a default judgment if Ransquawk did not intend to do so. I annex as Exhibit E a copy of Mr. LoBue's February 11, 2014 e-mail.

6. On February 17, 2014, Mr. Turnbull responded by stating that Ransquawk had not retained U.S. counsel and disputing the propriety of service, but without providing any basis for that dispute. I annex as Exhibit F a copy of Mr. Turnbull's February 17, 2014 e-mail.

7. Patterson Belknap served the summons and complaint to Ransquawk by FedEx through the S.D.N.Y. Clerk of Court's office pursuant to the Court's Foreign Mailing Instructions and Fed. R. Civ. P. 4(f)(2)(C)(ii). I annex as Exhibit G the cover letter and FedEx tracking receipt submitted to the Clerk of Court indicating that on January 17, 2014, Ransquawk received the summons and complaint sent by the Clerk of Court.

8. I annex as Exhibit H the Clerk's Certificate indicating that the summons and complaint were served on Ransquawk through the Clerk of Court's office on January 17, 2014, that proof of service was filed on February 7, 2014, and that Ransquawk has not filed an answer or otherwise moved with respect to the complaint. It has now been 96 days since Ransquawk was properly served with the summons and complaint.

9. By serving Ransquawk in this manner, Dow Jones satisfied both Fed. R. Civ. P. 4(f)(2)(C)(ii) and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention").

6926466v.1

Service was made pursuant to the Hague Service Convention's Article 10, which permits both service of judicial documents directly to persons abroad by postal channels and judicial officers to effect service of judicial documents through competent persons in the State of destination. The United Kingdom does not object to service made pursuant to Article 10. *See* Hague Conference on Private International Law, "United Kingdom – Central Authority & Practical Information," *available at* http://www.hcch.net/index_en.php?act=authorities.details&aid=278.

10. Ransquawk has defaulted both pursuant to Fed. R. Civ. P. 55 and the Hague Service Convention's Article 15, as Ransquawk was properly served, it has not appeared or responded, the summons and complaint were actually delivered to Ransquawk by a method provided for by the convention, and the service was effected in sufficient time for it to defend.

11. I monitored the website ransquawk.com at various times between October 17, 2013 and November 13, 2013. During that period, I observed Ransquawk copying headlines from Dow Jones's DJ Dominant feed seconds after the headlines were posted on DJX. Those observations are set forth in Exhibit A to the complaint. I have visited the site on several occasions since.

12. Dow Jones, through its attorneys, sent Ransquawk the "cease-and-desist" letter attached as Exhibit B to the Complaint in this case on November 11, 2013. Starting on November 14, 2013, I observed that Ransquawk blocked Patterson Belknap from monitoring its audio and real-time newsfeed services. Upon information and belief, this was done by blocking connections to its service that were made by IP addresses associated with Patterson Belknap.

13. As recently as April 16, from outside the Patterson Belknap network, I observed Ransquawk copying DJ Dominant headlines. Though Patterson Belknap is blocked from subscribing to Ransquawk's live audio and text feeds, ransquawk.com generates a stand-

alone web page for each story it posts on its text feed. I annex as Exhibit I copies of three sets of headlines posted on DJ Dominant on April 16, 2014 and the corresponding copy posted on ransquawk.com one or two minutes later: "Post Holdings Is Likely Winner in Auction Of Michael Foods – Sources" (two headlines posted on DJ Dominant at 11:40 a.m.) (Ransquawk copy posted at 11:41 a.m.), "GIP Exploring Sale of 50% Stake In Ruby Pipeline – Sources" (four headlines posted on DJ Dominant at 12:47 p.m.) (Ransquawk copy posted at 12:48 p.m.), and "RadioShack Hasn't Obtained Lender Approval to Close 1,100 Stores – Sources" (three headlines posted on DJ Dominant at 3:50 p.m.) (Ransquawk copy posted at 3:52 p.m.). The Ransquawk timestamps are all six hours later due to the time zone difference.

14. At some point after January 17, 2014, Ransquawk blocked any computer on Patterson Belknap's network from viewing *any* portion of the ransquawk.com website. I annex as Exhibit J a print screen showing the result of my attempt to access the public Ransquawk website on April 17, 2014 from the pbwt.com domain.

15. As of March 4, 2014, Alexa.com, which monitors Internet traffic, stated that 36.8% of Ransquawk's visitors come from the United States and that more visitors are from the United States than any other country. Alexa.com, "Ransquawk.com Site Info," *available at* http://www.alexa.com/siteinfo/ransquawk.com. I annex as Exhibit K screen captures of the webpage from March 4, 2014. While in my experience the Alexa numbers can vary significantly over time, this shows that the percentage of U.S.-based traffic to ransquawk.com is at least this high at times.

16. Patterson Belknap served the Court's Order of Default Judgment Schedule on Ransquawk by FedEx through the S.D.N.Y. Clerk of Court's office pursuant to the Court's Foreign Mailing Instructions and Fed. R. Civ. P. 4(f)(2)(C)(ii) to both the address formerly listed

on ransquawk.com and the address currently listed on ransquawk.com. I annex as Exhibit L the Certificates of Mailing and the FedEx tracking receipts indicating that on April 12, 2014 and April 14, 2014, Ransquawk received the Court's Order of Default Judgment Schedule sent by the Clerk of Court.

17. A proposed form of judgment is attached as Exhibit M.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 23, 2014

_____
Adam E. Pinto

6926466v.1